IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAKODA HLAVATY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 5:16-cv-000949-RP |
| | § | |
| INTEGRATED PRODUCTION | § | |
| SERVICES, INC. | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Defendant Integrated Production Services, Inc. (hereinafter "IPS" or "Defendant") submits its Response in Opposition to Plaintiffs' Motion for Conditional Certification [Dkt. No. 30] (hereinafter "Plaintiffs' Motion"), and offers in support the following:

## I.   INTRODUCTION

Plaintiffs seek conditional certification of a putative class of individuals based upon allegations that they and a vague class of "hourly-paid oilfield workers" were required to perform "off the clock" work for which they were not paid overtime. Plaintiffs also contend that Defendant did not include nondiscretionary job bonuses within their regular rate for purposes of calculating overtime. Plaintiffs' Motion should be denied on several grounds. First, the scope of the proposed putative class is overly broad, and Plaintiffs have not afforded the Court with adequate facts – such as a sufficient description of Plaintiffs' job duties and the job duties of the members of the proposed class – to determine whether all "hourly-paid oilfield workers" are similarly situated. Second, even if Plaintiffs performed off the clock work, which Defendant denies, pursuant to established case law, "off the clock" claims are highly individualized and not suited for class certification.

Additionally, at all relevant times, Defendant properly included Plaintiffs' bonuses in calculating any overtime pay which might have been owed to Plaintiffs.

Alternatively, in the event the Court grants Plaintiffs' Motion, the proposed class should be limited to <u>Operators</u> in <u>Texas</u> because Plaintiffs have only provided the declarations of four (4) former employees who worked as Operators out of Defendant's Victoria, Texas.

## II.   <u>STATEMENT OF FACTS</u>

In their Motion and First Amended Complaint, the named-Plaintiffs reflect that they were employed by the IPS as "hourly paid oilfield workers." Plaintiffs' Motion for Conditional Certification, ¶ 1; *see also* Exhibit B, Relevant Excerpts from Plaintiffs' First Amended Complaint [Dkt. No. 21], ¶¶ 3, 212, 213, 216, 220. IPS is in the oil and gas services industry. IPS provides coil tubing services. The coil tubing process provides a client the ability to perform a variety of services inside the well bore using a continuous stream of steel pipe. The coil tubing process deploys tools into the well bore in order to service the well, including setting plugs, cleaning out the well and drilling out plugs. Exhibit A, Affidavit of Scott McFarlain, ¶ 2.

The coil tubing equipment would be operated by a crew of three to seven hourly-paid individuals, including Coil Tubing Operators, Senior Coil Tubing Operators, Crane Operators, Nitrogen Operators, Pump Operators, Senior Pump Operators, and Coil Tubing Helpers (collectively, "Operators"). The crew would be supervised by a salary-paid Coil Tubing Supervisor. Exh. A, ¶ 4. IPS also provided Operators a non-discretionary daily job bonus, which was included in the calculation of their overtime pay. Since at least January 1, 2013, IPS calculated overtime pay using the coefficient, half-time method as set forth by the United States Department of Labor at 29 C.F.R. § 778.120. Exhibit D, Affidavit of Robert Swingler, ¶¶ 3 and 4.

Since at least 2013, IPS has also maintained a "Recording Worked Time" written policy and an "Overtime" written policy in its Employee Handbook. All new hires receive a copy of the

Employee Handbook. Employees also receive a copy of the Employee Handbook if it is revised during the course of the employee's employment. The "Recording Worked Time" policy provides that "hourly paid employees are required to sign their timesheet submitted to their supervisor each pay period for the hours worked acknowledging that the hours reported are true and correct to the best of their knowledge and inclusive of all time worked." The "Overtime" policy provides that that an employee's "supervisor must authorize all overtime in advance." The policy also provides that "overtime pay (one and a half times your hourly rate or applicate co-efficient overtime rate) will be earned after the employee works forty (40) hours in a work week." Exhibit C, Affidavit of Shauna Clark, ¶¶ 4 and 5; *see also* Exh. C-1, C-2, and C-3.

At the beginning of 2014, rather than submitting handwritten timesheets to their supervisors, Operators began submitting their time through a mobile application on their smart phones entitled "J.J. Keller." Through the J.J. Keller application, Operators would also clock in and clock out for work. The application recorded the Operators' time worked to the nearest minute. Every other Monday, the Operator's time would then be transferred from the J.J. Keller application to Defendant's Kronos electronic timekeeping system. The employees would then log in and review their time entries in Kronos and approve their time. The time would subsequently be approved by the District Manager and submitted to Payroll in Kronos for payment. Exh. A, ¶ 10.

IPS never instructed any Operator to perform "off-the-clock" work for which they were not paid including, but not limited to, taking work-related phone calls without pay, servicing or driving trucks without pay, loading trucks without pay, or refueling vehicles without pay. Exh. A, ¶ 6. In fact, IPS' "Recording Time Worked" policy prohibited employees from doing so.

Plaintiffs submitted the declarations of Craig Nelson, Jeremy Radcliffe, Michael Muniz, and Michael Hooker in support of their Motion. *See* Dkt. 30-1, Dkt. 30-2, Dkt. 30-3, and Dkt. 30-4. Defendant employed Plaintiff Hooker as a Pump Operator from July 9, 2012 to January 4, 2016 in

the Victoria, Texas District. Defendant employed Plaintiff Radcliffe as a Senior Pump Operator from February 20, 2012 to March 3, 2016 in the Victoria, Texas District. Defendant employed Plaintiff Nelson as Pump Operator from March 5, 2012 to December 16, 2013 in the Victoria, Texas District. Defendant employed Plaintiff Muniz as a Senior Coil Tubing Operator from August 1, 2011 to June 5, 2015 in the Victoria, Texas District. Exh. A, ¶¶ 12, 13. The payroll records for Plaintiffs Nelson, Radcliffe, Hooker, and Muniz establish that non-discretionary bonuses were included in their overtime pay using the applicable co-efficient method. *See* Exh. D, ¶ 8; *see also* D-1, D-2, D-3, and D-4 to Exh. D, Excerpts from Payroll Registers for Plaintiffs Nelson, Radcliffe, Hooker, and Muniz.

### III.   ARGUMENT AND AUTHORITIES

**A.   Plaintiffs' Burden on a Motion for Conditional Certification of a Collective Action.**

**1.   The Court Has Discretion to Deny Motions for Conditional Certification.**

Section 216(b) of the FLSA authorizes "any one or more employees" to maintain a suit "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA does not provide for conditional collective action certification or the distribution of judicially approved notice to putative plaintiffs. *See* 29 U.S.C. § 216; *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 176 (1989) (Scalia, J., dissenting). However, the United States Supreme Court has recognized that district courts "have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) ... by facilitating notice to potential plaintiffs." *Hoffman-La Roche*, 493 U.S. at 167. Conditional certification of a collective action is left solely to the Court's discretion. "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris v. Fee Transportation Servs., Inc.*, No. 3:05-cv-0077-P, 2006 WL 1994586, at *2 (N.D. Tex. May 15, 2006) (internal citations omitted). "The relevant inquiry is not whether the court has discretion to facilitate notice, but

whether this is an appropriate case in which to exercise discretion." *Hall v. Burk*, No. 3:01-cv-2487, 2002 WL 413901, at *5-6 (N.D. Tex. Mar. 11, 2002) (mem. op.) (internal citations omitted).

Plaintiffs bear the burden of proof on a motion for conditional certification and must persuade the Court not only that similarly-situated individuals exist, but that sending notice to these individuals is a worthwhile exercise of the Court's discretion. *See e.g., Badgett v. Tex. Taco Cabana, L.P.*, No. H-05-3624, 2006 WL 2934265, at *1-2 (S.D. Tex. Oct. 12, 2006) (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D 399, 400 (E.D. Tex. 1999)); *D'Anna v. M.A.-Com, Inc.*, 903 F. Supp. 889, 893-94 (D.Md. 1995). Courts should allow collective actions only when "common issues of law and fact arising from the same alleged … activity" promote efficiency and judicial economy. *Hoffman-La Roche*, 493 U.S. at 170.

### 2. Plaintiffs Must Provide "Some Evidence" That "Similarly Situated" Individuals Were Subjected to "A Single Decision, Policy, or Plan" That Violated the FLSA.

At the initial notice stage, Plaintiffs "must provide the court with some evidence showing that [Defendant] subjected a group of similarly situated potential class members to a 'single decision, policy or plan' violating the provisions of the FLSA." *Albanil v. Coast 2 Coast, Inc.*, No. H-08-486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008). Most courts require plaintiffs to provide some type of factual basis in support of their allegations – typically in the form of affidavits or declarations provided by the named plaintiffs and the potential plaintiffs who wish to opt into the lawsuit. *See, e.g., Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 287 (N.D.Tex. 2012); *Oliver v. Aegis Commons Grp., Inc.*, No. CIV.A. 3:08–CV–828–K, 2008 WL 7483891, at *3 (N.D.Tex. Oct. 30, 2008). Unsupported assertions of widespread FLSA violations are insufficient to meet the plaintiff's burden at the notice stage. *See Hall*, 2002 WL 413901, at *3 (internal citations omitted).

**B.    Plaintiffs' Motion Should Be Denied Because Plaintiffs Have Failed to Provide Evidentiary Support That Putative Class Members Are Similarly Situated.**

When analyzing a motion for conditional certification of a collective action, the Court "must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in" with respect to the Plaintiffs' claims. *Bamgbose v. Delta-T Group, Inc.*, 684 F. Supp. 2d 660, 668-69 (E.D.Pa. 2010). Although the first stage of the *Lusardi* test "is lenient, it is not automatic." *Badgett*, 2006 WL 2934265, at *2. Even in cases where the parties have conducted little discovery and the court has minimal evidence before it, courts still require some evidence of a common, unlawful policy beyond conclusory assertions in pleadings, affidavits, or declarations. *Albanil*, 2008 WL 4937565, at *3; *Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2-3 (W.D. La. Apr. 7, 2008); *Aguirre*, 2006 WL 964554, at *5.

In support of Plaintiffs' Motion, Plaintiffs provide declarations signed by four (4) named Plaintiffs. Each declaration sets forth identical boilerplate language, wherein the declarants state that they "were required to perform 'off-the-clock' work for which we were not paid," "Defendant did not include bonuses when calculating the hourly overtime rate of compensation for hourly-paid oilfield workers," and "I know we were paid the same based not only on my observations, but also because we often talked about how we got paid." *See generally* Dkt. 30-1, Dkt. 30-2, Dkt. 30-3, and Dkt. 30-4. Other than summarily stating that they observed and spoke with other unnamed employees about how they were paid, the declarants provide no background as to how they may have knowledge of alleged FLSA violations pertaining to anyone other than themselves. These vague and conclusory declarations simply do not provide competent evidence of a single decision, policy, or widespread illegal plan causing any putative plaintiffs to work "off the clock" or that bonuses were not included within their overtime rate of compensation. *See, e.g., Songer v. Dillon Res., Inc.*, 569 F.Supp.2d 703, 707-08 (N.D.Tex. 2008) (The plaintiffs' submission of affidavits from five named plaintiffs that were virtually identical and contained primarily conclusory

allegations unsupported by any factual assertions demonstrating the basis of the affiants' knowledge was insufficient to establish that putative class members were together the victims of a single decision, policy, or plan infected by discrimination).

Furthermore, the evidence submitted by Plaintiffs in this case is essentially identical to that in *Mathis v. Stuart Petroleum Testers, Inc.*, 2016 WL 4533271 (W.D. Tex. Aug. 29, 2016), in which the Court denied a plaintiff's motion for conditional certification.  In *Mathis*, Judge Robert Pitman determined that the declaration provided by the named plaintiff in support of his motion (which contained the <u>exact same</u> language as the declarations in this case and which declaration was prepared by the same plaintiffs' counsel)[1] did not sufficiently describe his basic job requirements and duties or the basic job requirements and duties of the putative class members such that the Court could adequately determine whether the plaintiff and putative class members were similarly-situated. *Id.* at *3-4.

In *Mathis*, the plaintiff sought conditional certification of a class that included "[a]ll of [Defendant's] former and current Pump Supervisors and/or Field Supervisors (or similar positions)." *Id.* at *2. In his supporting declaration, the plaintiff asserted that "[t]he jobs ... are very physical and demanding jobs that are worked outdoors" and that his "primary job duties" in these jobs "were manual labor."  The plaintiff further described the basic tasks of both jobs as "maintain[ing] and operat[ing] the equipment used at the oilfield well sites." *Id.*  The plaintiff further made several conclusory assertions in his declaration, including that the positions "were essentially the same at all locations."  However, because the plaintiff added no further explanation of what basic tasks a pump or field supervisor working for Defendant might perform, merely stating that "[t]he primary job duties ... were to maintain and operate the equipment used at well sites," the Court held that Plaintiff's bare assertions about what the job of a pump supervisor and field

---

[1] *See* generally Dkt. 30-1, ¶ 5; Dkt. 30-2, ¶ 5; Dkt. 30-3, ¶ 5; and Dkt. 30-4, ¶ 5.

supervisor entails were too vague for the Court to determine that other employees in the same positions perform the same basic tasks, which prevented the Court from being able to conclude that members of the proposed class were similarly situated to Plaintiff. *Id.* at *3-4.

In this case, the declarants make the <u>exact same</u> conclusory statements as those made by the declarant in *Mathis*,[2] the only difference being that Plaintiffs seek certification of an <u>even more generalized, overly broad, and vague</u> class of "hourly-paid oilfield workers."[3]   For example, Plaintiffs fail to explain what equipment an "hourly-paid oilfield worker" for Defendant would regularly use, what other types of employees they would work with, or what specific tasks they would perform.   Plaintiffs' description of the job duties — "maintain[ing] and operat [ing] the equipment used at the oilfield well sites" — "is instead so broad that it could include nearly any worker performing some manual labor at a well site, even if that worker had vastly different job duties than those of the Plaintiff."[4]   *Id.* at 3.   As a result, just like in *Mathis*, the Court in this case should deny Plaintiffs' Motion on the grounds that Plaintiffs have not provided the Court with enough information to enable it to determine that all members of Plaintiffs' proposed class were similarly situated to Plaintiffs in their basic job requirements and duties.

Moreover, the allegations of the "off the clock" work purportedly experienced by the declarants are also vague, ambiguous, and generalized.   Such allegations include that the declarants "were often required to perform 'off-the-clock' work for which [they] were not paid, such as servicing trucks, driving time, loading trucks, and taking work-related phone calls ... these uncompensated hours were generally worked in addition to [their] compensated hours in excess of forty per week."   The declarants do not provide sufficient factual detail and fail to indicate how or

---

[2] *See* Dkt. 30-1, Dkt. 30-2, Dkt. 30-3, and Dkt. 30-4.
[3] Plaintiffs' First Amended Complaint does not provide any additional detail, and references the same vague language regarding Plaintiffs' basic tasks and job duties as the language cited in the declarations. *See* Exh. B, ¶¶ 221-222.
[4] *See* Dkt. 30-1,  Dkt. 30-2, Dkt. 30-3, and Dkt. 30-4.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR CONDITIONAL CERTIFICATION

when the declarants worked off the clock without pay, who instructed them to work off the clock in violation of clear Company policy, or if and when the declarants complained that they were required to work without pay.

In contrast to the vague, generalized allegations in this case, in *Lay v. Gold's Gym Intern, Inc.*, SA-12-cv-754-DAE, 2013 WL 5595956 (W.D. Tex. Oct. 4, 2013), fitness consultants and sales managers filed a putative collective action against their employer alleging in more specific detail the alleged violations of FLSA overtime provisions for failure to compensate them for "off-the-clock" work. *Id.* at *1. The Court determined that, based on the declarations submitted, plaintiffs made a sufficient showing that a regional policy or practice of not compensating the proposed class members existed in a particular region. *Id.* at *5. However, in contrast to this case, many of the declarations in *Lay* provided specific facts regarding off the clock work, including that the plaintiffs were "encouraged" to work off-the-clock and that their General Managers had them sign blank punch correction forms to alter the recorded number of hours worked. *Id.* at *4. Several of the plaintiffs also maintained that although they complained to their supervisors that they were working overtime without compensation, the employer took no corrective action to see that they were compensated. *Id.*

Unlike the plaintiffs in *Lay*, Plaintiffs here have not provided any specific allegations (only insufficient conclusory assertions in the declarations of four (4) named Plaintiffs) from which the Court could reasonably conclude that there was a common policy or practice by IPS Company-wide that warrants certification of a putative collective action. Plaintiffs have only provided vague, conclusory, and over-generalized allegations that they and other individuals were subject to a common decision, policy, or plan. As a result, the Court should deny Plaintiffs' Motion because Plaintiffs have failed to produce "evidentiary support beyond the bare allegations contained in [Plaintiffs'] complaint and personal declaration[s]" demonstrating that they and the members of the

putative class they seek to have certified are similarly-situated. *See Valcho v. Dallas County Hosp. Dist.*, 574 F. Supp. 2d 618, 622-23 (N.D. Tex. 2008).

**C.   Plaintiffs' Off-the-Clock Claims Are Not Appropriate for Collective Action Treatment as a Matter of Law.**

**1.   Plaintiffs' Off-the-Clock Claims Are Not Actionable as a Matter of Law and Defendant has Submitted Unrefuted Evidence of a Lawful Written Policy.**

Plaintiffs' off-the-clock allegations are also inappropriate for class certification because they do not constitute a credible allegation of a violation of the FLSA as a matter of law. Based upon Defendant's stated policies, Plaintiffs bore the responsibility for accurately reporting their time. *See* Exh. C, ¶¶ 4 and 5; *see also* Exh. C-1, C-2, and C-3. "[I]f the 'employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207.'" *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (internal citations omitted). In *Newton*, the plaintiff had the duty to submit time reports showing any overtime hours worked but did not do so. *Id.* at 748. Because the employee did not "adhere to [the employer's] procedures for claiming overtime," the Court held that the plaintiff could not show that his employer had "violated the FLSA by paying him only for the hours claimed on his time sheets." *Id.*; *accord Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (quoting *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) ("[W]here the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours ... the employer cannot be said to have suffered or permitted the employee to work."); *see also McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir. 1998) (noting that employee's "failure to record claimed [uncompensated] time is fatal to a later claim for such [time]").

Here, during the relevant time period, IPS maintained a policy requiring all Operators to report their time accurately. Pursuant to IPS's policy, Operators were required to sign their

timesheets submitted to their supervisors each pay period for the hours worked acknowledging that the hours reported were true and correct to the best of their knowledge and inclusive of all time worked. Exh. C, ¶ 4. Moreover, IPS utilized the J.J. Keller application which Operators used to clock in and clock out for work. This application recorded the Operators' time to the nearest minute. The Operators would then have another opportunity to review and make changes to their time entries in the Kronos system. If there were no issues, the Operators would approve their time for payment. Exh. A, ¶¶ 9, 10. Despite IPS' clear policy regarding recording of time worked, Plaintiffs now claim that they are due overtime wages for alleged off-the-clock work performed. However, Plaintiffs bore the responsibility to record their time properly and, if Plaintiffs' allegations in this case are true, they failed to do so.

Moreover, because Defendant has presented conclusive evidence of the existence of a valid and lawful written policy concerning Plaintiffs' responsibility to record all of their time worked and verify the accuracy of their time entries, conditional certification of Plaintiffs' off-the-clock claims is inappropriate as a matter of law. *See, e.g., Dudley v. Tex. Waste Sys., Inc.,* 2005 WL 1140605, at *2 (W.D.Tex. May 16, 2005) (denying motion for conditional certification of class of employees who were subject to alleged Company-wide policy of improper lunch break adjustments where plaintiff did not present any evidence refuting defendant's written policy that employees were admonished to take lunch breaks or testimony that drivers were informed of their lunch period).

## 2.  Plaintiffs' Off-the-Clock Claims Require Individualized Factual Inquires That Make Collective Treatment Inappropriate.

Even if Plaintiffs' off-the-clock allegations could constitute a cognizable claim under the FLSA, which Defendant denies, such allegations require individualized factual inquires that make such claims inappropriate for collective action certification. *See, e.g., Caballero v. Kelly Servs., Inc.,* H-14-1828, 2015 WL 12732863 (S.D.Tex. Oct. 5, 2015). In *Caballero,* an off-the-clock case, the Court noted that such individualized inquiries would include the individual practices of each

supervisor, the communications of each supervisor with defendant's management regarding overtime practices, the effect of each supervisor's individual practices on the hours worked by each employee, and each employee's time-keeping practices. *Id.* at *7.

Similar to *Caballero*, Plaintiffs' "off-the-clock" claim in this case requires highly individualized factual inquiries. These inquiries include: (a) the names of the supervisors who told Plaintiffs that they were required to work "off the clock," (b) when and where Plaintiffs were told they were required to work "off the clock," (c) whether Plaintiffs ever complained to IPS about this practice, and (d) whether Plaintiffs performed "off the clock" work pre-shift or post-shift. The declarations of the putative collective action members provide scant information regarding these individualized inquiries. *See Smith v. Family Video Movie Club, Inc.*, 11-CV-1773, 2013 WL 1628176, at *8 (N.D. Ill. Apr. 15, 2013) (finding, in an off-the-clock case, that the supporting declarations contained "no details as to who 'required' the declarants to incur unpaid travel time or why Plaintiffs believed they were required to do so … thus, even the basic answer to the question of whether and under what circumstances an employee was required to incur unpaid travel time would necessitate individual inquiry at the store level, if not the individual employee level."). Given this lack of detail, it is impossible to determine whether IPS had a widespread practice of requiring off-the-clock work.[5]

In addition to the highly-individualized facts Plaintiffs would need to support their alleged claims, Defendant would be entitled to assert its own potential defenses to any alleged FLSA "off-the-clock" violations, and such defenses would require highly individualized evidence concerning each employee. Such disparate individual defenses asserted by Defendant would heighten the individuality of the claims and complicates the significant management problems. *See Basco v.*

---

[5] Plaintiffs' claims are also highly speculative in view of the affidavit provided by Defendant's District Manager in Texas, who testified that such a practice did not occur in his district and that the Plaintiffs who provided declarations in this case never complained of such a practice. Exh. A, ¶¶ 6, 11.

*Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *8-9 (E.D. La. Jul. 2, 2004) (off-the-clock case in which conditional certification was denied).  For example, Defendant would be entitled to: (1) contest whether any off-the-clock work occurred and whether it resulted in nonpayment of FLSA overtime as to each employee; (2) argue specific defenses available under the FLSA that seem to require individual testimony particularly in reference as to what constitutes "work" under the FLSA; (3) demonstrate its managers and supervisors did not know about the off-the clock work and that plaintiffs failed to take advantage of IPS' system for reporting time; (5) demonstrate that any off-the-clock work falls within the *de minimus* exception to the FLSA; (6) demonstrate employee's claims are barred by statute of limitations or technical defaults; and (7) demonstrate that each manager and supervisor acted in good faith and that liquidated damages are not appropriate.  *See id.*  As such, the Court should deny Plaintiffs' Motion.

**D.    Plaintiffs' Claim for Failure to Include Non-Discretionary Bonus in Overtime Pay is Not Suitable for Collective Certification Because IPS' Evidence Conclusively Demonstrates that It Properly Included Bonuses in the Overtime Pay Calculation.**

IPS admits it provided hourly-paid Operators non-discretionary bonuses.  However, in contrast to Plaintiffs' claims, IPS demonstrated that it properly included such bonuses in Operators' overtime pay in accordance with its written policy.  As noted in IPS' overtime policy, it was an express option for IPS to calculate overtime pay "using the applicable co-efficient overtime rate." Exh. C, ¶ 5; Exh. C-1, C-2, and C-3.  In fact, since at least January 1, 2013, and therefore during all relevant times for purposes of this lawsuit, IPS calculated overtime pay using the co-efficient half-time method prescribed by the United States Department of Labor.  Exh. D, ¶¶ 3-7.  More specifically, the payroll record exemplars for each of the four (4) declarants offered in support of Plaintiffs' Motion clearly indicate that Defendant properly included bonuses within Plaintiffs' regular rate for purposes of calculating overtime utilizing the coefficient method.  Defendant coded the total straight overtime pay as "OT1" on the employees' pay stubs and the total bonus overtime

pay was coded as "OTB" on the employees' pay stubs. Added together, these amounts equaled the total overtime earned by an employee at the rate of one-and-a-half times the regular rate of pay in a given workweek, including all job bonuses. Exh. D, ¶ 6; Exh. D-1, D-2, and D-3.

In light of Defendant's clear evidence that the declarant-Plaintiffs' job bonuses were included within their overtime rate of pay, and in contrast to Plaintiffs' broad and conclusory assertions in their declarations, Plaintiffs' claims are not viable and are therefore not suited for collective certification. *See, e.g., Saleen v. Waste Mgmt., Inc.,* 649 F.Supp.2d. 937, 942 (D.Minn. Sep. 1, 2009) (finding that plaintiffs' broad claims of a common policy providing that they and tens of thousands of other similarly-situated employees were not paid time worked for meal breaks were not suitable for class certification in the face of direct evidence submitted by defendant that thousands of employees were properly paid for time worked during meal breaks). Further, because Defendant has adduced conclusive evidence of the existence of a valid and lawful policy and practice concerning the inclusion of Plaintiffs' bonuses within their overtime pay, Plaintiffs' request to certify a broad class of employees whose bonuses were allegedly not included within their overtime rate of pay should be denied. *See, e.g., Griffith v. Wells Fargo Bank, N.A.,* No. 4:11–CV–1440, 2012 WL 3985093, at *5 (S.D.Tex. Sept. 12, 2012) (finding that plaintiff's bald assertion that Wells Fargo failed to pay overtime on nondiscretionary bonuses either to her or to a purported class of similarly situated loan processors was insufficient to support conditional certification in the face of Wells Fargo's clear evidence of a policy calculating and including the lawful overtime amount for every non-discretionary bonus it paid to its loan processors).

**E.    Alternatively, the Proposed Class Should Be Limited to *Operators* in *Texas*.**

Conditional certification of a collective action is left solely to the court's discretion. "[N]otice is by no means mandatory" and "the relevant inquiry in each particular case is whether it would be appropriate to exercise such discretion." *Harris*, 2006 WL 1994586, at *2. Yet, a court

also "has the power to modify an FLSA collective action definition on its own" if the "proposed class definition does not encompass only similarly situated employees." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008).

Should the Court determine that class certification is appropriate in this case, the scope of the class should be limited to hourly-paid Operators in Texas. Courts have routinely held that where employees have different job titles, duties, and pay practices, they are not similarly-situated for purposes of collective treatment. *Pacheco v. Aldeeb*, No. 5:14-cv-121-DAE, 2015 WL 1509570, at *6 (W.D. Tex. Mar. 31, 2015) (noting that for class members to be similarly-situated they must be subject to common pay provisions *and* have similar job requirements); *Vasquez v. Am. Bor-Trench, Inc.*, No. 4:12-cv-3181, 2014 WL 297414, at *3 (S.D. Tex. Jan. 23, 2014) (same); *Dryer*, 2008 WL 5204149, at *2 (nothing that employees may not be similarly situated when their job duties vary significantly). *See also Robinson v. Dolgencorp, In*c., 2006 WL 3360944 (M.D. Fla. 2006) (refusing to conditionally certify a collective action involving allegations of an unofficial policy requiring off-the-clock work where the proposed class had different job duties and plaintiffs had filed only two affidavits alleging the same FLSA violations).

Plaintiffs ask this Court to conditionally certify a collective action, which includes "each individual employed as an hourly-paid oilfield worker" in virtually every state in which IPS has performed services during the three (3)-year class period. *See* Plaintiffs' Motion, p. 3. As the sole evidence in support of their Motion, Plaintiffs provide four (4) declarations by Plaintiffs Craig Nelson, Jeremy Radcliffe, Michael Muniz, and Michael Hooker. In response, Defendant has provided a sworn affidavit from the District Manager for the Victoria, Texas District, Scott McFarlain. Mr. McFarlain is personally familiar with and supervised Plaintiffs Muniz, Radcliffe, and Hooker, and attests that each of these employees worked in various Operator positions out of the Victoria, Texas location. While Mr. McFarlain is not personally familiar with Mr. Nelson, a

review by Mr. McFarlain of Mr. Nelson's personnel information as kept in the ordinary course of Defendant's business indicates that Mr. Nelson also worked in an Operator position out of the Victoria, Texas location.  Exh. A, ¶¶ 11-13.  As such, notices should not be sent to any "hourly oilfield workers" other than Operators who worked out of locations in Texas.[6]

Plaintiffs have provided no evidence of hourly-paid oilfield workers who were subject to the same or similar policies other than the declarants, who all worked as Operators.  Additionally, the evidence produced by Defendant shows that the declarants each worked in Texas locations and therefore they would not have personal knowledge of pay practices outside of the locations in which they worked.  Exh. A, ¶¶ 11-13.  Plaintiffs have therefore failed to show the existence of common illegal pay practices or decisions on a company-wide basis.  *See, e.g., Orozco v. Anamia's Tex-Mex Inc.*, 2016 WL 1622880, at *4 (N.D.Tex. Feb. 10, 2016) (declarations regarding experiences from servers who all worked out of defendant's Plano, Texas location were insufficient to establish that defendant had a uniform tipping and wage payment policy at each of its restaurants company-wide); *see also Aufleger v. Eastex Crude Co.*, No. 2:05-cv-310-J, 2006 WL 2161591 (N.D.Tex. July 31, 2006) (denying conditional certification where plaintiffs had limited, if any, knowledge of other locations).

In this case, Plaintiffs attempt to pursue a nation/Company-wide collective action while only providing declarations from individuals who were employed in Texas locations.  Moreover, these individuals only summarily allege that they "believe there are other [hourly-paid] oilfield workers

---

[6] At most, Plaintiffs have only provided evidence from declarants who worked at well sites in Texas, Louisiana, Arkansas, and Oklahoma.  The declaration provided by Nelson admits that he only worked in Texas; the declaration provided by Radcliffe states that he worked in Texas, Oklahoma, and Arkansas; the declaration of Muniz states that he worked in Texas and Louisiana; and the declaration of Hooker states that he worked in Texas, Oklahoma, and Louisiana.  *See* Dkt. 30-1, ¶ 6; Dkt. 30-2, ¶ 6; Dkt. 30-3, ¶ 6; and Dkt. 30-4, ¶ 6.  It is also undisputed that the declarants were all employed in "Operator" positions because their declarations do not provide otherwise.  Nor does Plaintiffs' First Amended Complaint indicate that any of the Plaintiffs were employed in positions other than "Operator" positions.

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
FOR CONDITIONAL CERTIFICATION

who would want to join this lawsuit" that "Defendant has one corporate office that implemented common practices, policies, and procedures for all employees and one payroll department that handled payroll for all employees," and that Defendant operates in locations and states other than those in which the declarants themselves worked.[7] *See* Dkt. 30-1, ¶¶ 14, 16; Dkt. 30-2, ¶¶ 14, 16; Dkt. 30-3, ¶¶ 14, 16; and Dkt. 30-4, ¶¶ 14, 16.  However, allegations that "simply state that [a plaintiff] <u>believes</u> other workers were discriminated against in similar ways … [does] not satisfy the movant's [Rule] 216(b) burden." *Housden*, 186 F.R.D. at 400 (emphasis added).

Plaintiffs have only presented evidence of alleged "off-the-clock" work and an alleged failure to include bonuses within their overtime rate of pay in the limited locations in which the declarants worked.  As a result, if the Court decides to authorize notices to potential collective action members, it should do so only for Operators who worked in Texas as provided by the evidence in this case.

## IV.    CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant prays that Plaintiffs' Motion for Conditional Certification be in all things denied, or that, if it is granted, that it only be granted to the extent set forth herein.  Defendant prays for such other and further relief, at law or in equity, to which it may be entitled.

---

[7] Moreover, the declarations set forth only self-serving, vague, speculative, and conclusory allegations about the overtime hours worked and corresponding pay practices applicable to other employees.  For example, each declarant states, "I know from my experience working for Defendant that other hourly-paid oilfield workers performed similar job duties and worked similar hours regardless of location." *See* Dkt. 30-1, ¶ 7; Dkt. 30-2, ¶ 7; Dkt. 30-3, ¶ 7; and Dkt. 30-4, ¶ 7. These summary, uncorroborated allegations should not be considered by the Court. *See, e.g., Albanil*, 2008 WL 4937565, at *3; *Treme v. HKA Enters., Inc.*, 2008 WL 941777; *Aguirre*, 2006 WL 964554, at *19.

Respectfully submitted,


/s/ Mark A. McNitzky
Lawrence D. Smith
State Bar No. 18638800
larry.smith@ogletreedeakins.com
Mark A. McNitzky
State Bar No. 24065730
mark.mcnitzky@ogletreedeakins.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
2700 Weston Centre
112 East Pecan Street
San Antonio, Texas 78205
(210) 354-1300 – Telephone
(210) 277-2702 – Facsimile

ATTORNEYS FOR DEFENDANT
INTEGRATED PRODUCTION SERVICES, INC.


## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of February, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Josh Sanford
Sanford Law Firm, PLLC
One Financial Center
650 S. Shackleford Road, Suite 411
Little Rock, Arkansas 72211

/s/ Mark A. McNitzky
Lawrence D. Smith/Mark A. McNitzky